Good morning. May it please the Court. Joe Siguenza for Petitioner. In this Immigration Appeal, the primary issue is whether substantial evidence supports the IJ's adverse credibility findings with respect to Petitioner's claim for asylum and related relief. In her decision, and it's to be noted that this case is a pre-Real ID Act case, in her decision the IJ cited nine bases for her adverse credibility findings. Petitioner will briefly summarize each ground for adverse credibility and generally will argue that the inconsistencies of any that the IJ found were either minor, inconsequential, did not go to the heart of the claim, and revealed nothing about the applicant's fear for his safety. The first inconsistency that the IJ cited was with respect to dates. Whether or not a rally in which Petitioner participated occurred in either October 1993 or in October 1995. Petitioner submits that that omission, any inconsistency as to whether or not this particular event occurred on either of those dates is not material, and he did Mr. Siguenza, I think there was another basis regarding the 1993 rally for finding of an inconsistency, and it had to do more with the substance of the rally. My notes indicate that at one point in his application for asylum, Mr. Singh claimed it was an AISSF, which is All India Sikhs Congress rally, and that 14 members of AISSF were arrested. At the hearing, he testified the rally was to protest two women's arrests, and the rally had nothing to do with AISSF, and that 70 people were arrested that day. So there seems to be an inconsistency as to the subject matter of the rally, the purpose of the rally, the people who were at the rally, and how many got arrested. Yes, Your Honor. So it isn't just 1993 versus 1995. No. And it does concern also, as Your Honor indicated, those apparent inconsistencies. Petitioner would submit that his application admittedly does not include the purpose, does not state the purpose of the rally on that date. However, he did testify, and I believe his application reflects that the purpose of the rally was to protest against atrocities against Sikhs in general. So in that sense, it was AISSF-related. And also he said in his application that it was AISSF-related. Yes. The second relation at the hearing said the rally had nothing to do with AISSF, and it was just about two women who had been badly treated and the arrest of two women. Your Honor, my – I'm sorry. My understanding of his testimony is that he did state that the purpose of the rally was twofold. It was AISSF-related in the sense that it was demonstrating against Sikh atrocities, and that the purpose of the rally, and I believe he brought it out on cross-examination, is that it was also to protest the arrest of two village girls, two girls in his particular village. So in that sense, he was inconsistent. Excuse me. In that sense, his testimony was consistent with his application. His application admittedly did not include the purpose of the rally, but it did mention there was a rally held, and he clarified that during his testimony to the court that What do you do with the testimony that the rally had nothing to do with AISSF? That's an administrative record, 1060-62. Well, if you characterize that as an omission in his 589 application, omissions in pre-Real ID Act cases don't per se necessarily, the Petitioner submits, constitute a basis for adverse critical. I don't think Judge Bea is saying it's an omission. I think he's saying it's a contradiction. Well, Your Honor, again, my understanding, and if I'm mistaken, I apologize, but it's my understanding that his testimony clarified that it was both a rally to protest against Sikh atrocities and also on cross-examination he clarified that it was also to protest the arrest of two village girls. You know, there were these nine supposed inconsistencies, but some of the inconsistencies were discussed in detail and emphasized by the IJ. And I think one of them had to do with the documents. And, you know, the IJ basically said that he basically said there were no documents establishing his membership, and then he had documents, and they had a picture that wasn't consistent with what he was arguing. I mean, isn't that substantial evidence? Well, Your Honor, the Petitioner would submit with respect to those aspects of the IJ's decision that, for example, the IJ commented that he lacked corroborating evidence to prove that he had attended college in India. She was concerned about that and whether, in fact, he attended college. Petitioner would submit that he had testified he had joined the AISSF before he entered college, so in that sense it's irrelevant. It's collateral also. And it doesn't I was asking about the documents establishing his the documents that seemed to have pictures that were of ages that didn't correspond to what he was saying. I believe Your Honor is referring to the ration card. Oh, okay. Yes. In our brief, we argued that the IJ's conclusion as to whether or not that ration card was authentic was based on pure speculation. There was no expert evidence or forensic evidence, rebuttal evidence to show that the card was not authentic. In fact, I believe DHS was given an opportunity to do forensics on these particular documents and there was no evidence submitted by DHS to rebut. But I thought that her conclusion was that the photograph on the card was of a man sensibly older than the date on the card would indicate. And Mr. Singh should have been photographed as a teenager on that card and he was not a teenager any longer. Do you think that aging of a person is a matter of expert testimony? Not necessarily, Your Honor. Well, I'll concede that. But I don't believe that the testimony was fully developed by either side as to the authenticity of the card and the process used to issue the card. In that sense, if you take Petitioner's testimony as credible in the sense that he says, I am Eshan Singh, and if there's no, necessarily no rebuttal evidence from DHS other than questioning the photo itself, we would submit that he has established his identity and whether or not that ration card was issued with that particular photo on it, we would submit is collateral if, in fact, he's established his identity through other means. I believe that there is in the record an affidavit of his mother that establishes that he is, in fact, Eshan Das Singh, Eshan Das being the family name, Singh being the name that he took as a Sikh when he joined the AISSF, and we would submit that in that sense he's established his identity. The other inconsistencies, if I may, just in the remaining 30 seconds to reserve rebuttal, has to do with dates and whether or not he had mentioned the, quote, five Sikh signs. We would submit that he did, in fact, clarify that the bracelet that the IJ was concerned about was mentioned by him. There's a portion of the transcript that's indiscernible as to, as he's reciting the five signs. We would submit that he is, in fact, including the bracelet as, quote, worn on his hand. Whether or not it's proper to wear on the left or right arm or left or right hand is inconsequential, at least in terms of his credibility. Can I go back to the card a second? I thought that he first said there was no, he had no membership card, and that, I'm talking about not a ration card but a membership card. And then he said, then he produced one that seemed to be pristine and had the picture that was not consistent with his asylum application picture. Have I got the wrong card? I, my understanding is, Your Honor, I believe he said when he joined, he was issued a card with his photo on it, and it listed his rank, if you will, as serviceman. I don't believe that he had produced that in court. My understanding is that the, the IJ's concern about the photo was with respect to the ration card. I may be mistaken. I apologize.  I can check that. Thanks. Thank you. May it please the Court. Andrea Jeavis on behalf of the Attorney General. This Court should deny Petitioner's petition. Let me ask you a question, just picking up on what Mr. Spencer was talking about as he sat down. The question of the bracelet and whether it was being worn on the right wrist or on the left wrist, which is important if one follows Sikh tenets. Is there any evidence in the record that Sikhs wear the bracelet on the right hand rather than the left hand? Or is this something that the IJ just made up or saw in a movie? This was from the State Department report, Your Honor, which could be found on page, it's cited in the brief, page 1239, which says that Sikhs wear their bracelet on the right arm. Okay. Thank you very much for a precise answer. Sure. Of course. And I'd like to discuss the adverse credibility determination. And I would like to just point out, now, yes, there are numerous inconsistencies that the immigration judge discusses, but I'd like to point out to the three main ones, which Judge Baer and Judge Ristine, you've already touched upon, too. And I'd like to talk about the membership card. It is the government's understanding what occurred is Petitioner told the asylum officer before his asylum hearing that AISSF did not issue membership cards. However, before the immigration judge, he appeared with a membership card issued in 1987. Now, the problem with the membership card picture is it looked very similar to his asylum application. And the problem was that 1987 is when he was issued the membership card, and he was approximately 17 years old. Now, in 1997, when he issued his asylum application, he would be about 27 years old. So the immigration judge noted that the pictures looked very similar to each other, although they should be a difference of 10 years. And that was the problem with the picture. And also the inconsistency about telling the asylum officer, I have no membership card, and then suddenly appearing with a membership card from 1987, which predated his asylum officer interview. Now, returning to the 1993 rally that Judge Baer touched upon, that's in his asylum or I'm sorry, in his asylum application, he mentions that it's an AISSF rally, and that 14 AISSF members were arrested. However, before the immigration judge, he changed that story to 70 arrested at a rally with the purpose being of two women's focusing on the purpose of two women being released, and that 25 to 30 AISSF members were arrested. Now, the judge, immigration judge, offered him an opportunity to explain, and he stated that the 14 members he was referring to were local leaders. However, the immigration judge did not accept that explanation because in the asylum application, he specifically referred to members, not leaders. And now Petitioners offered a new explanation and said that that was just an estimation, 25 to 30, 14, the numbers are similar. And the first oh, I'm sorry, and the third major inconsistency deals with the 1996 arrest. Before the asylum officer, Petitioner stated that 250 people were arrested, he had been detained with 20 others, and that he was severely mistreated by being beaten with belts and batons. However, before the immigration judge, he stated that he was arrested alone in a room, he could not breathe, but that he had not been beaten. These three major inconsistencies clearly support the agency's adverse credibility determination. And just to note that this Court only needs one ground, which is supported by substantial evidence that goes to the heart of the matter to find, to uphold the adverse credibility determination. Well, you know, that I don't quite follow, the last point. Okay. He made a stronger statement of what happened to him at the asylum officer, and then he made a weaker explanation of what happened to him when he was testifying. And the conclusion is that he was lying when he was testifying? No, it's not that it was weaker. It's just facts are very different. 1996 arrest, he says he was beaten. Right. Before the immigration judge, he said he was not beaten. He described being beaten by batons and belts and strips. These aren't just weaker. These are inconsistencies. They don't mesh. And also, it is the government would like to point out that it is Petitioner's burden to compel reversal of this adverse credibility determination, and that he has not done so. Now, Petitioner also claims ineffective assistance of counsel and – I'm sorry, Petitioner also filed a motion, untimely motion to reopen. He's trying to excuse its untimeliness by its claiming ineffective assistance of counsel and change country conditions. And the government would like to argue that Petitioner did not – as for Attorney King, which is one of the attorneys he's claiming ineffective assistance against, the board remedied any alleged ineffective assistance by reissuing the 2002 decision and allowing Petitioner to seek review of that decision. Now, regarding Attorney Singh, Petitioner failed to – first of all, failed to show due diligence. He – the immigration judge's adverse credibility determination came out in 2001. The board decision came out in 2002, and it took three-plus years for him to file his motion to reopen. Petitioner does not address this argument in his brief and does not show how he – how he is not in effecting ineffective assistance. I suppose he would say that he had newly discovered evidence. He – I assume that's the way he would say that I didn't make a motion to reopen because I didn't have new evidence during that period. Yes, but that's – Attorney Singh was the attorney that represented him before the immigration judge and did – that prepared his asylum application. Attorney Singh did not represent him before the board. I'm sorry. Did not represent him before this Court. Attorney Singh, he's – I'm assuming he – I thought that there was three attorneys. Was Cain the one before the Ninth Circuit for which he got relief? Yes. Correct. He did get relief. And Attorney Singh is the other one. There's not a third as far as the government's aware. Okay. But he's also vague in what he claims Attorney Singh's ineffective assistance  He just says that he did not prepare me before the hearing. However, Attorney Singh is the one that prepared his asylum application. And this is an adverse credibility determination. So just stating a blatant statement, he did not prepare me, what did not prepare me to lie, did not prepare me to what. He's very thorough in how he claims Cain – Attorney Cain's ineffective assistance, and he's very vague in maternity. Yeah. I was a little confused about the changed country. Is the essential argument that things are getting worse for Sikhs? That is what he's claiming, that his claim is now worse. However, if you look at the 2000, which is what is before the immigration judge, and the 2004 country reports, which is what is in his motion to reopen, it's essentially the same. He has not proven any worse conditions than it is – than it was at 2000. Furthermore, a change in country conditions cannot convert the incredible claim into a legitimate claim. So he has to overcome that burden as well. Therefore, in sum, Petitioner has failed to overcome his burden of proving the adverse credibility determination was wrong. Because substantial evidence supports the agency's decision that Petitioner was adversely credible, and Petitioner has failed to show an exception to his untimely motion to reopen. What is the effect in our analysis of the fact that this is a pre-real ID case? It must go to the heart of the matter, Your Honor. That's the main difference. But I've provided three hopeful – three of the nine inconsistencies to demonstrate that it did go to the heart of the matter. And this Court only needs one. Thank you, Your Honors. Thank you. Your Honor, in time for rebuttal, we'll give you a couple of minutes. Thank you, Your Honor. I didn't know if I had reserve – had actually had any rebuttal time. I appreciate it. I'll just make two brief points. But before I do that, I wanted to clarify. Your Honor had asked whether or not the photo – the concern about the photo related to the membership card or the ration card. I stand corrected, and I apologize. It does relate to the membership card. With respect to counsel's reference to whether Petitioner credibly testified regarding his last arrest, the 1996 arrest, this involves whether or not the asylum officer's notes and assessment to refer and recollection of Mr. Singh are, in fact, accurate. I believe in Petitioner's brief it's argued that the asylum officer, by his own admission, could not make out most of his notes. They were illegible. And that he had no independent recollection of Mr. Singh. And because of his reference and his chronology of what Mr. Singh was telling him at the asylum office, there is a real question as to whether or not the asylum officer's reference to beatings actually referred to the last arrest or whether it referred to a previous arrest. Petitioner submits that those notes regarding the beating that was discussed in court relates to a previous arrest and not the last arrest. Petitioner, by his own admission and testimony, states that when he was last arrested, he was not physically harmed. Thank you. Thank you very much. The case of Singh v. Holder will be mark submitted. We thank counsel for their oral argument.
judges: Restani, Schroeder, Bea